# EXHIBIT 10

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br><br>**PLAINTIFFS:** WILLIAM DAVID BAKER and JEFFREY GILL on their own behalf and on behalf of all others similarly situated,<br><br>v.<br><br>**DEFENDANTS:** HELIX TCS, INC., HELIX TCS, LLC, HRBENEFIX CO, LLC, GI SPE-HRBENEFIX, LLC. | ☐   COURT USE ONLY   ☐ |
| Attorneys for Plaintiffs:<br>Brandt Milstein, # 42866<br>MILSTEIN LAW OFFICE<br>2400 Broadway, Suite B<br>Boulder, CO 80304<br>Phone Number: 303.440.8780<br>Fax Number: 303.957.5754<br>brandt@milsteinlawoffice.com<br><br>Andrew H. Turner, Atty. Reg. # 43869<br>THE KELMAN BUESCHER FIRM<br>600 Grant Street, Suite 450<br>Denver, CO  80203<br>Phone Number: 303-333-7751<br>Fax Number: 303-333-7758<br>aturner@laborlawdenver.com<br><br>Attorneys for Defendants:<br>Jordan Factor, #38126<br>Jeremy T. Jonsen, #48859<br>ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.<br>1600 Stout St., Suite 1100<br>Denver, Colorado 80202<br>Phone Number: (303) 534-4499<br>jfactor@allen-vellone.com<br>jjonsen@allen-vellone.com | Case Number:  2017CV031428<br><br>Courtroom: 269 |

**JOINT MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs and Defendants (the "parties") submit this Joint Motion to request that the Court grant preliminary approval to their class action settlement per Colorado Rule of Civil Procedure 23(e).

**INTRODUCTION**

The parties have settled this class action wage case and respectfully submit their Settlement Agreement (Exhibit 1) for the Court's approval. The parties assert that the agreement satisfies all criteria for approval. The agreement is fair in broad terms because it provides for a greater recovery for all participating employees than they would likely have achieved at trial.

The parties move the Court for an order:

1. Granting final certification to the Class defined as:

   All individuals employed by Defendants Helix TCS, Inc. and/or Helix TCS, LLC on or after March 8, 2015, whom Helix classified as either an "armed operator" or a "site supervisor", and who were paid on a salary basis;

2. Confirming the appointment of David Baker and Jeffrey Gill as Class Representatives;

3. Confirming the appointment of Brandt Milstein and Andrew Turner as Class Counsel;

4. Granting preliminarily approval to the Settlement Agreement;

5. Approving the attached Notice of Settlement (Exhibit 2) and requiring Plaintiffs to disseminate the Notice to the Class Members to inform them of the settlement terms and to afford them the opportunity to opt-out of, or object to, the Settlement, and permitting Class Members 45 days from the date of Notice mailing to opt-out of or object to the Settlement; and

6. Setting a Final Fairness Hearing at the Court's earliest convenience but at least 60 days after the Court grants preliminary approval to the Agreement.

**PROCEDURAL HISTORY**

On April 19, 2017, Plaintiffs filed this class action to recover overtime wages they claim they and their co-workers are due for work performed as security guards employed by Defendants. Plaintiffs alleged that Defendants misclassified their "site supervisor" security guard employees as exempt from the overtime protections of the Colorado Minimum Wage Order ("MWO").

2

In the regular course of discovery, the parties exchanged more than ten thousand documents, deposed ten Class Members, including the two Class Representatives, and gathered sworn statements from an additional five Class Members (for a total of 11% of the class). Plaintiffs took C.R.C.P. Rule 30(b)(6) deposition testimony from the Helix Defendants. The parties marshalled their evidence in detailed class certification briefing, and the Court heard the parties' oral arguments as to the propriety of class certification on August 3, 2018.

On August 9, 2018, the Court provisionally appointed named Plaintiffs David Baker and Jeffrey Gill to serve as Class Representatives, provisionally appointed Plaintiffs' counsel as Class Counsel, and conditionally certified a Class of:

All individuals employed by Defendants Helix TCS, Inc. and/or Helix TCS, LLC on or after March 8, 2015, whom Helix classified as either an "armed operator" or a "site supervisor", and who were paid on a salary basis.

The class included 243 members.

On August 23, 2018, Defendants petitioned the Colorado Court of Appeals for interlocutory review of this Court's class certification ruling. Plaintiffs filed their response to Defendants' petition on September 7, 2018. On September 14, 2018, the appellate court dismissed Defendants' petition for review.

On November 19, 2018, Plaintiffs' counsel disseminated Court-approved notice of the class action to all Class Members, informing them, per C.R.C.P. 23(c)(2), that the Court would exclude any Member from the class if any such Member so requested by January 18, 2019; that the judgment, whether favorable or not, would include all Members who did not request exclusion; and that any Member who did not request exclusion may, if she or he desired, enter an appearance through her or his own counsel. Five individuals opted out of the action.

The parties participated in a formal mediation before former U.S. Magistrate Judge Boyd Boland on January 11, 2019, and continued informal negotiations and litigation thereafter. The parties reached terms of settlement on April 6, 2020.

## SUMMARY OF THE SETTLEMENT TERMS

To determine the value of the Class Representatives' and each Class Member's claims, the Representative Plaintiffs and Class Counsel reviewed upwards of ten thousand time-worked and wages-paid records produced by Defendants. Based on the documents produced, and after prolonged, arms-length negotiations, Defendants agreed to pay $201,291.00 to compensate Plaintiffs and the Class for unpaid overtime wages. Ex. 1, Settlement Agreement, at § 2(a). Defendants further agreed to pay $30,000.00 as incentive awards to the Class Representatives (*Id.,* at § 2(b)) and an additional $168,709.00 in attorney fees and costs. *Id.,* at § 2(c). Defendants will also pay the employers' portion of required withholding and payroll taxes. *Id.,* at § 2(a)(i). The Class Representatives and Members will be responsible for their respective federal, state and local tax obligations. *Id.,* at § 2(a)(ii).

3

In exchange for delaying payment until Defendants exhaust the appeals process in a related Federal Action,[1] Defendants will pay 9% interest on the wage portion of the settlement, and 5% interest on the attorney fee portion of the settlement for the period between March 1, 2020 and the date of payment. *Id.,* at § 2(e). All accrued interest will be added, on a pro-rata share basis, to Class Members' recoveries. *Id.*

Defendants will effectuate payment of wage damages to Class Members, incentive awards to Class Representatives, and attorney fees and costs to Class Counsel on the later of (1) Sixty days after exhaustion of the appeal in the Federal Action or (2) Sixty days after this Court's final approval of the Agreement.

Defendants agreed to provide the Class with a series of security provisions to ensure payment. *Id.,* at § 2(d)(i)-(vii). First, because Defendants will issue settlement checks directly to Class Members, Defendants will provide Class Counsel with proof of payment in the form of photocopies of all checks issued. Second, Defendants will provide Plaintiffs with a Confession of Judgment in the amount of $420,000.00, to be filed in the event of Defendants' failure to make payment pursuant to the Agreement. Third, Defendants have delivered to Plaintiffs and filed with the Colorado Secretary of State UCC financing statements conveying security interests of $400,000.00 in Defendants' accounts receivable. Fourth, Defendants agree that they will be held jointly and severally liable for all payments required by the Agreement. And fifth, Defendants covenant that, should any Defendant file for bankruptcy prior to completion of all payments required by the Agreement, no Defendant will contest any adversary proceeding commenced by Plaintiffs in a bankruptcy matter.

Any funds not claimed by Class Members will not revert to Defendants. *See Id.,* at § 2(f)(i-ii). Rather, Unclaimed Funds will be re-distributed, on a pro-rata share basis, to those Class Members who cash the initial wage damages checks issued to them. Any funds that remain unclaimed after the second distribution will be forwarded a *cy pres* organization: The Denver Public Schools Foundation.

In consideration of the monetary and security interests created to benefit the Class, Members of the Class who do not opt-out will release Defendants from all claims related to the claims and allegations made in this action which accrued prior to court approval of the Agreement, with the limited exceptions of liquidated damages, attorney's fees and costs sought under 28 U.S.C. § 216(b) in the Federal Action. *Id.,* at § 4.

## ARGUMENT

### I.   The Court Should Grant Final Certification to the Class per C.R.C.P. Rule 23

On August 9, 2018, the Court preliminarily certified the following Rule 23 Class:

---

[1] *Kenney v. Helix TCS, Inc*., Case No. 17-cv-01755-CMA-KMT (D. Colo. 2017) ("*Kenney*").  The commitments Defendants have made in the settlement of this matter are not contingent on the resolution of appeals in the *Kenney* case.  It is only the timing of payment which may be affected by the resolution of the appeals in *Kenney*.

4

>All individuals employed by Defendants Helix TCS, Inc. and/or Helix TCS, LLC on or after March 8, 2015, whom Helix classified as either an "armed operator" or a "site supervisor", and who were paid on a salary basis.

The Parties now respectfully request that the Court grant final certification to the Class because all of the requirements of C.R.C.P. Rule 23 are met. In *Amchem Products, Inc. v. Windsor*, the Supreme Court addressed the settlement class issue. The Court held that a district court faced with final certification of a class for the purposes of settlement need not inquire whether the class "would present intractable problems" with trial management, but that the other requirements for certification must still be satisfied. 521 U.S. 591, 620 (1997).

### A. The Proposed Settlement Class Is Sufficiently Numerous

To satisfy Rule 23's numerosity requirement, the class must be so numerous that joinder of all members would be "impracticable." C.R.C.P. Rule 23(a)(1). Here, there are 238 members of the Rule 23 Class, making it impracticable to join all members as individual plaintiffs. *Jackson v. Unocal Corp.*, 231 P.3d 12, 24 (Colo. App. 2009), *rev'd on other grounds*, 262 P.3d 874 (Colo. 2011) ("[T]he difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable.") (citing Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:5, at 247 (4th ed.2002)); *Bass v. PJCOMN Acquisition Corp.*, 2011 WL 2149602, at *2 (D. Colo. June 1, 2011) (Class of between 50 and three 300 pizza delivery drivers sufficient for finding of numerosity). Rule 23's numerosity requirement is satisfied here.

### B. The Commonality Requirement Is Met

The proposed class features common questions of law and fact. C.R.C.P. 23(a)(2). "Establishing commonality does not necessarily mean that every issue must be common to the class. If the claims of the class representative and the class members are based upon the same legal theory, commonality is established." *Garcia v. Medved Chevrolet, Inc.*, 240 P.3d 371, 377–78 (Colo. App. 2009), aff'd, 263 P.3d 92 (Colo. 2011).

Here, whether the Class Members were misclassified as exempt from the protections of the MWO, whether the Class Members worked overtime hours for which they were not paid overtime premiums, and whether the Class Members' Site Supervisor agreements preclude them from recovering full overtime wage damages are all questions that are common to the entire membership of the Class.

### C. The Typicality Requirement Is Met

"A successful prospective class representative must, among other requirements, establish 'typicality,' meaning that there is identical unlawful conduct which has been directed at both the class representative and the proposed class members irrespective of some variation in the facts that underlie the individual claims." *Garcia,* 240 P.3d at 378 (Colo. App. 2009).

Here, Plaintiffs allege that Defendants failed to pay overtime wages to all their Site Supervisors; conduct Plaintiffs claim was universally applied to the entire Class. Plaintiffs allege

5

that this common conduct violated the MWO. Because Plaintiffs' claims challenge the same conduct under the same factual and legal theory as do the claims of the absent class, their claims are typical of the class' claims under C.R.C.P. 23(a)(3).

D. Adequacy of Representation

C.R.C.P. 23(a)(4) requires that the representative parties to a class action fairly and adequately protect the interests of the class. "To satisfy the adequacy requirement for class certification, plaintiffs must show by a preponderance of the evidence that they will fairly and adequately protect the interests of the class, and, to this end, named plaintiffs must have no conflicting interests with the class they seek to represent, and the plaintiffs must be represented by competent counsel." *Reyher v. State Farm Mut. Auto. Ins. Co*., 230 P.3d 1244, 1257 (Colo. App. 2009), *rev'd on other grounds,* 266 P.3d 383 (Colo. 2011). "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of upholding the class, subject to later possible reconsideration, or the creation of subclasses initially." *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998) (citing to 7A Charles A. Wright et al., *Federal Practice and Procedure*, §1765 at 269 (internal quotes and citations omitted)).

Here, neither the named Plaintiffs nor Class Counsel has any conflict with the Class Members. Plaintiffs' claims are congruent with, and are not antagonistic to any Class Member's claims. Plaintiffs and their counsel secured a substantial class-wide settlement in a complex case requiring three years of contentious litigation and arms-length negotiation to bring to a close.

Further, the Plaintiffs selected counsel for the proposed Class who specialize in class action wage and hour litigation on behalf of low-wage workers. Appointed Class Counsel focus their practice in this highly technical area and have litigated numerous cases under the MWO, and other states' wage and hour laws. Plaintiffs' counsel has extensive experience in Rule 23 class wage actions. *See, e.g., Ramirez et al. v. El Tapatio, Inc. et al.*, Case No. 1:13-cv-00861-REB-BNB, ECF No. 58 (Approving Rule 23 class action settlement and appointing Brandt Milstein and Andrew H. Turner as class counsel); *Menocal et al. v. The GEO Group, Inc.,* 1:14-cv-02887-JLK-MEH, Doc. No. (Appointing Brandt Milstein, Andrew H. Turner and others as class counsel for class of more than 62,000 members); *Pliego v. Los Arcos Mexican Restaurants, Inc. et al.,* 14-cv-01686-RM-KMT (Approving hybrid 216(b) and Rule 23 class action settlement and appointing Brandt Milstein as class counsel); *Douglas County Federation, et. al. v. Douglas County School Dist. RE-1*, 17-cv-01047-MEH, Doc. 56 at 29 (D. Colo. Jan. 11, 2018)(Hegarty, J.)(Andrew H. Turner class counsel); *Torres-Vallejo v. CreativExteriors, Inc., et. al.*, 1:15-cv-2832-WJM-CBS, Doc. 31 at 55 (D. Colo. Nov. 23, 2016)(Martinez, J.)(same); *Reams, et. al. v. Coast to Coast Trade Show Services, Inc.,* 2015CV31412 (Denver Dist Ct. Apr. 20, 2015)(Starrs, J.)(same); *DeLeon-Granados v. Eller & Sons Trees, Inc.,No.* 1:05-CV-1473-CC, 2006 U.S. Dist. LEXIS 73781 (N.D. Ga. Sept. 28, 2006)(same). Plaintiffs and their counsel prosecuted this case vigorously on behalf of the class.

E. The Proposed Class Satisfies the Requirements of C.R.C.P. 23(b)(3)

6

Because the questions of law and fact common to class members predominate over individual issues, and because the class action is the superior method for adjudicating this case, the proposed class satisfies the requirements of C.R.C.P. 23(b)(3).

The Representative Plaintiffs' claims and those of the class arise from the same questions of law and fact involving Defendants' pay policies and practices. Whether Defendants' policies and practices violated the MWO will be litigated repeatedly if these claims are not aggregated. "In terms of efficiency for the parties and for the court, a class action is superior to individual suits in the effort to achieve a fair and efficient adjudication of the plaintiffs' claims." *Bass v. PJCOMN Acquisition Corp.,* 2011 WL 2149602, at *4 (D. Colo. June 1, 2011).

A class action is the superior method of adjudicating the instant case because the absent class members have shown no interest in controlling the litigation of separate actions and because the concentration of claims is desirable since all Defendants reside in and all claims arose in this judicial district. C.R.C.P. 23(b)(3)(A)-(C). A class action is also the preferred method for adjudicating this controversy because it involves the relatively small claims of low-wage workers. Courts regularly recognize that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued. *Belote v. Rivet Software, Inc.*, 2013 WL 2317243, at *4 (D. Colo. May 28, 2013); *Maez v. Springs Auto Grp.,* 268 F.R.D. 391, 397 (D. Colo. 2010).

For all the foregoing reasons, the Court should grant final certification to the Rule 23 Class.

## II. The Court Should Find that the Settlement Agreement is Fair and Reasonable for the Purposes of C.R.C.P. 23

Rule 23 class claims may only be settled with the Court's approval. C.R.C.P. 23(e). In deciding whether to approve class action settlement agreements, courts query whether an agreement is fair, adequate, and reasonable. *Thomas v. Rahmani-Azar*, 217 P.3d 945, 947 (Colo. App. 2009). Courts evaluate the following factors in making the approval determination: (1) The strength of the plaintiffs' case; (2) The risk and expense of further litigation; (3) The amount of the settlement; (4) The extent of discovery completed; and (5) The experience and views of counsel; and reaction of interested parties to the settlement. *Id.* at 948. This Court's approval of the settlement will not be disturbed on appeal absent a strong showing of a clear abuse of discretion. *Bruce W. Higley, D.D.S., M.S., P.A. Defined Ben. Annuity Plan v. Kidder, Peabody & Co., Inc.,* 920 P.2d 884, 891 (Colo. App. 1996).

1. <u>Plaintiffs' Case Was Strong, But Not Without Risk</u>

Defendants classified Plaintiffs and the putative class as exempt from the overtime protections of the MWO because the employees were "site supervisors" who, according to Defendants, qualified for the MWO exemption from overtime pay at 7 CCR 1103-1(5)(b):

> **Executive or Supervisor**: a salaried employee earning in excess of the equivalent of the minimum wage for all hours worked in a workweek. Said employee must supervise the work of at least two full-time employees and have the authority to

7

>
> hire and fire, or to effectively recommend such action. The executive or supervisor must spend a minimum of 50% percent of the workweek in duties directly related to supervision.

Plaintiffs countered that neither they nor the putative class members qualified for the exemption because, *inter alia,* though their job titles included the word "supervisor," they did not in practice supervise two or more employees. Plaintiffs planned to present time record evidence at trial showing that the guards worked alone or with just one other guard 95% of the time they were on shift, and that on 97.33% of workdays in the class period, fewer than three security guards overlapped for more than two hours, such that on just 2.67% of workdays was it even possible that a class member supervised the work of two other employees.

Defendants, in turn, argued that the Class Members in fact supervised additional guards at other worksites remotely, and that the Class Members signed written agreements waiving their right to overtime wages.

In evaluating the settlement value of the case, Plaintiffs felt confident that they would prevail on liability given the mathematical impossibility that the vast majority of the class could have supervised two other employees. Plaintiffs also believed they would defeat, on summary judgment, Defendants' waiver defense to liability based on Colorado statutory and U.S. Supreme Court case law precluding the defense. C.R.S. § 8-4-121("Any agreement, written or oral, by any employee purporting to waive or to modify such employee's rights in violation of this article shall be void."); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945) (statutory wage and hour rights cannot be waived).

Plaintiffs believed they faced real risk, however, that the jury would award only 1/3 of the damages sought based on the Class Members' alleged agreement to work overtime hours for a set salary, as evidenced in signed written agreements produced by Defendants regarding overtime compensation. *Clements v. Serco, Inc*., 530 F.3d 1224, 1230 (10th Cir. 2008) ("[T]he fluctuating workweek method is to be used when there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period.").[2] As is described more fully immediately below, the "fluctuating workweek" damages calculation risk faced by Plaintiffs could have resulted in a jury award of far less than the recovery achieved for the Class in settlement.

### 2. Further Litigation Would Have Presented Real Risk to the Class

Under the Agreement, the Class Members will recover more damages than they likely would have recuperated had they prevailed at trial. This is so because, prior to the litigation, Defendants secured written agreements from Class Members allegedly evidencing the parties' understanding that the fixed salary paid to Class Members was to compensate the employees for

---

[2] *Medina v. Conseco Annuity Assur. Co*., 121 P.3d 345, 348 (Colo. App. 2005) ("[F]ederal cases under F.R.C.P. 23 are persuasive because C.R.C.P. 23 is virtually identical to the federal rule.").

8

up to 60 hours of work per week. A jury may have found a "clear mutual understanding" between the parties that the salaries paid accounted for overtime hours worked and may have calculated unpaid overtime wage damages at a .5 multiplier of each employee's regular rate, per the fluctuating workweek method, rather than at the 1.5 multiplier Plaintiffs sought.

Nonetheless, Plaintiffs and Class Counsel negotiated a settlement based on a 1.5 regular rate multiplier. Had the Class prevailed at trial, and had damages been calculated per the fluctuating workweek method, the Class would have been awarded $155,028.55. Under the Agreement, the Class will recover $201,291.00, even after attorney fees and incentive awards are deducted. Thus, further litigation would have presented a very real risk to the Class.

### 3. The $400,000.00 Settlement Is Reasonable

As above, the Members of the Class will recover more under the Settlement than they would have recovered had they prevailed on liability at trial, but lost the argument regarding the method for calculating their damages. On the other hand, because the MWO contains a fee-shifting provision[3], and because Plaintiffs were likely to prevail at trial on liability, Defendants are able to avoid what would surely have been hundreds of thousands of dollars in defense counsel and Class Counsel attorney fees related to a trial of the merits of this action. The Settlement is reasonable as to all parties.

### 4. Extensive Discovery Was Completed Before Settlement

Over the three-year pendency of this action, the parties thoroughly examined the available evidence for each fact issue pertinent to liability and to damages. Ten class members sat for deposition, and five more submitted sworn statements regarding the liability and damages facts at play. Plaintiffs took 30(b)(6) deposition testimony from the corporate defendants, and the parties exchanged more than 10,000 documents in response to written requests. The documentary and electronic evidence reviewed included job descriptions, employee manuals, "site supervisor" agreements regarding pay (referenced above in regard to the fluctuating workweek issue), spreadsheet data regarding job sites worked by each Class Member, personnel files, employment contracts, and thousands of pages of documents reflecting Class Members' wages paid and hours worked. Plaintiffs hired a statistician to compile and analyze the job site data produced, which data set included 25,271 daily time entries, spanning 2015 to 2018, for hundreds of workers at different work sites.

Counsel represent to the Court that all fact issues were thoroughly vetted through discovery before the parties commenced settlement negotiations.

### 5. Counsel are Experienced and Believe the Settlement to be Fair and Reasonable

The Court appointed Plaintiffs' counsel to represent the Class because Class Counsel have broad experience in wage and hour class action practice. See Exhibits 27 and 28 to the Motion for

---

[3] "An employee receiving less than the legal minimum wage applicable to such employee is entitled to recover in a civil action the unpaid balance of the full amount of such minimum wage, together with reasonable attorney fees and court costs…" MWO 7 CCR 1103-1(18).

9

Class Certification, <u>Declaration of Brandt Milstein In Support of Class Certification Motion</u> and <u>Affidavit of Andrew H. Turner</u>, attached hereto as Exhibits 3 and 4. Brandt Milstein has 14 years of experience litigating class wage claims on behalf of low-wage workers. Andrew Turner has been trying the same class of cases for 18 years.

Defense counsel too is experienced in class wage and hour litigation.

Undersigned counsel, based on their experience in similar cases, believe the Settlement to be fair and reasonable.

6.   <u>The Reaction of Parties Interested in the Settlement</u>

The parties seek an order requiring them to disseminate the attached <u>Notice of Settlement</u> (Exhibit 2) to inform the Class Members of the terms of the Settlement, and to provide all Class Members with the opportunity to opt-out of, or object to, the Settlement. The parties suggest that the Court permit Class Members 45 days from the date of mailing to opt-out of or object to the Settlement. The parties request that the Court set a Final Fairness Hearing at its earliest convenience after 60 days subsequent to its preliminary approval of the Agreement so that any objectors to the Settlement may be heard. After the Final Fairness Hearing, the Court will have the information it needs to evaluate the reaction of parties interested in the Settlement.

### 7.   The Court Should Rule that the Service Awards Are Reasonable

"[N]amed plaintiffs...are eligible for reasonable incentive payments" as part of a class action settlement. *Pliego v. Los Arcos Mexican Restaurants, Inc*., 313 F.R.D. 117, 131 (D. Colo. 2016) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). When evaluating the reasonableness of an incentive award, courts may consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The $15,000.00 service awards here are appropriate because Class Representatives David Baker and Jeffrey Gill expended significant efforts during this three-year litigation to ensure that the action was brought to a successful conclusion on behalf of the Class. *See* <u>Declaration of David Baker</u> (Exhibit 5) and <u>Declaration of Jeffrey Gill</u> (Exhibit 6). Both worked closely with Class Counsel to develop facts, evaluate discovery responses, review documents produced and discuss case strategy. *Id.* Baker and Gill traveled from afar to present themselves for deposition in Denver (Baker traveled overnight via bus from Las Vegas, Nevada, to appear at his deposition). *Id.* Baker and Gill advocated for the interests of the Class Members and made sure that the interests of the Class were at the forefront of negotiations. The incentive awards sought here are reasonable. *Cook,* 142 F.3d at 1016 (7th Cir.1998) (approving incentive award of $25,000 for named plaintiff); *Glass v. UBS Fin. Servs., Inc*., No. C–06–4068 MMC, 2007 WL 221862 (N.D.Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiff in a wage and hour case); *Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 incentive award to named plaintiff).

### 8. The Court Should Find that the Attorney Fee Award is Appropriate

Plaintiffs move separately and concurrently for approval of the attorney fee provisions of the Settlement.

### **CONCLUSION**

For the reasons set forth above, the Parties respectfully request that the Court enter an Order:

1. Granting final certification to the Class defined as:

   All individuals employed by Defendants Helix TCS, Inc. and/or Helix TCS, LLC on or after March 8, 2015, whom Helix classified as either an "armed operator" or a "site supervisor", and who were paid on a salary basis;

2. Confirming the appointment of David Baker and Jeffrey Gill as Class Representatives;

3. Confirming the appointment of Brandt Milstein and Andrew Turner as Class Counsel;

4. Granting preliminarily approval to the Settlement Agreement;

5. Approving the attached Notice of Settlement (Exhibit 2) and requiring Plaintiffs to disseminate the Notice to the Class Members to inform them of the settlement terms and to afford them the opportunity to opt-out of, or object to, the Settlement, and permitting Class Members 45 days from the date of Notice mailing to opt-out of or object to the Settlement; and

6. Setting a Final Fairness Hearing at the Court's earliest convenience but at least 60 days after the Court grants preliminary approval to the Agreement.

Respectfully submitted,

*s/ Brandt Milstein*
Milstein Law Office
2400 Broadway, Suite B
Boulder, CO 80304
303.440.8780
brandt@milsteinlawoffice.com

*s/ Andrew Turner*
The Kelman Beuscher Firm
600 Grant Street, Suite 450

*s/ Jordan Factor*
Allen Vellone Wolf Helfrich & Factor P.C.
1600 Stout Street, Suite 1100
Denver, Colorado 80202
303.534.4499
JFactor@allen-vellone.com

*Counsel for Defendants*

11

Denver, CO 80203
303.333.7751
aturner@laborlawdenver.com

*Class Counsel*

### CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document on all counsel of record by electronically filing with the Clerk of the Court.

*s/ Brandt Milstein*

Attachment to Order - 2017CV31428

12